**Gary M. Berne**, OSB No. 774077
gberne@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
jwagner@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
landersondana@stollberne.com
STOLL STOLL BERNE LOKTING
   & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR  97204
Telephone:  503/227-1600
503/227-6840 (fax)

*Local Counsel for Plaintiffs*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NECA-IBEW PENSION TRUST FUND (The Decatur Plan), and ANN F. LYNCH, AS TRUSTEE FOR THE ANGELA LOHMANN REVOCABLE TRUST, Individually and on Behalf of All Others Similarly Situated, | No. 3:16-cv-01756-YY <br><br> <u>CLASS ACTION</u> <br><br> STIPULATION OF SETTLEMENT |
| Plaintiffs, | |
| vs. | |
| PRECISION CASTPARTS CORP., MARK DONEGAN, DON R. GRABER, LESTER L. LYLES, DANIEL J. MURPHY, VERNON E. OECHSLE, ULRICH SCHMIDT, RICHARD L. WAMBOLD and TIMOTHY A. WICKS, | |
| Defendants. | |

This Stipulation of Settlement, dated January 8, 2021 (the "Stipulation"), is made and entered into by and among the following Settling Parties to the above-captioned litigation (the "Litigation"): (i) plaintiffs NECA-IBEW Pension Trust Fund (The Decatur Plan) and Ann F. Lynch ("Lynch"), as Trustee for the Angela Lohmann Revocable Trust ("Lead Plaintiffs"), by and through their counsel of record in the Litigation; (ii) Precision Castparts Corp. ("PCC," "Precision," or the "Company"), Mark Donegan, Don R. Graber, Lester L. Lyles, Ulrich Schmidt, Richard L. Wambold, and Timothy A. Wicks; and (iii) Daniel J. Murphy and Vernon E. Oechsle (the "Dismissed Defendants" and, together with the Company, Donegan, Graber, Lyles, Schmidt, Wambold and Wicks, the "Defendants") by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle this Litigation, upon and subject to the terms and conditions hereof and subject to the approval of the United States District Court for the District of Oregon (the "Court").

## I.    THE LITIGATION

This is an action on behalf of a putative class of all Persons who held Precision common stock who are alleged to have been harmed by the conduct at issue in the Litigation.  Excluded from the Class are Defendants and certain of their affiliates, as discussed below.  Lead Plaintiffs allege that Defendants violated §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, by making materially misleading statements and omissions in the Definitive Proxy Statement on Schedule 14A (the "Proxy"), filed with the SEC on October 13, 2015.  Defendants deny the allegations and deny that they violated any securities laws or SEC rules.

On August 10, 2015, Precision issued a press release announcing the execution of an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Berkshire Hathaway

Inc. ("Berkshire") and certain of its subsidiaries would purchase all of Precision's outstanding shares for $235.00 per share (the "Merger").  On October 13, 2015, Precision filed the Proxy.  On January 29, 2016, Berkshire completed the Merger.

On September 2, 2016, plaintiffs NECA-IBEW Pension Trust Fund (The Decatur Plan) and Angela Lohmann ("Lohmann"), [1] the former trustee for the Angela Lohmann Revocable Trust (together, the "Original Plaintiffs"), filed the initial Class Action Allegation Complaint (the "Initial Complaint").  ECF No. 1.  The Initial Complaint alleged claims against Defendants for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, in connection with the Proxy.[2]

On November 1, 2016, the Original Plaintiffs filed a motion seeking their appointment as lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§78u-4(a)(3)(B); and the appointment of their counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Berger Montague PC ("Berger Montague," and together with Robbins Geller, "Lead Counsel") as Lead Counsel ("Motion to Appoint Lead Plaintiffs").  ECF No. 27.

On November 21, 2016, the Court granted the Motion to Appoint Lead Plaintiffs and appointed the Original Plaintiffs as Lead Plaintiffs and Lead Counsel as Lead Counsel.  ECF No. 38.

On January 5, 2017, the Original Plaintiffs filed their Amended Class Action Allegation Complaint ("First Amended Complaint").  ECF No. 56.

---

[1]    Following Ms. Lohmann's death, Lead Plaintiffs filed an unopposed motion to substitute Lohmann's daughter, Ann F. Lynch, the successor trustee for the Trust, for Ms. Lohmann as Plaintiff in this action.  ECF No. 125.  Plaintiffs' motion was granted by the Court on May 13, 2020.  ECF No. 127.

[2]    Defendants Murphy and Oeschsle were subsequently voluntarily dismissed from the Litigation, and excluded as defendants in Plaintiffs' Second Amended Complaint.  ECF No. 122.

On March 6, 2017, Defendants filed their Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").  ECF No. 57.  In their Motion to Dismiss, Defendants argued that, under Fed. R. Civ. P. 12(b)(6) and the PSLRA, the Amended Complaint failed to state a claim upon which relief could be granted and should be dismissed with prejudice.  On May 5, 2017, the Original Plaintiffs filed their Opposition to Defendants' Motion to Dismiss the Amended Complaint.  ECF No. 59.  On June 5, 2017, Defendants filed their Reply in Support of Their Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 61.

On July 26, 2017, the Court held a hearing on Defendants' Motion to Dismiss, and took the motion under advisement.  ECF No. 66.

On October 3, 2017, Magistrate Judge Youlee Yim You issued Findings and Recommendations recommending the denial of Defendants' Motion to Dismiss ("F&R").  ECF No. 72.  Defendants objected to the F&R on October 17, 2017.  ECF No. 75.  Plaintiffs filed their response to Defendants' objection on October 31, 2017.  ECF No. 76.  On January 24, 2018, Judge Anna J. Brown adopted Judge You's F&R.  ECF No. 77.

On February 7, 2018, Defendants filed their Answer to the First Amended Complaint.  ECF No. 79.

From January 2018 through November 2019, the parties conducted extensive fact discovery.  Among other things:

- the parties exchanged their Initial Disclosures Pursuant to Rule 26(a)(1) on March 7, 2018;

- the Original Plaintiffs served their First Request for Production of Documents on March 9, 2018, and Defendants served their Responses and Objections on April 9, 2018;

- the Original Plaintiffs served a subpoena to Precision's financial advisor Credit Suisse (USA) LLC ("Credit Suisse") on April 25, 2018, and Credit Suisse served their Responses and Objections on May 9, 2018;

- the Original Plaintiffs served a subpoena to Berkshire on July 1, 2019, and subsequently negotiated the production of documents from Berkshire;

- the parties filed their Motion for Stipulated Protective Order on August 15, 2018 (ECF No. 83), and the Court entered the Stipulated Protective Order on August 17, 2018 (ECF No. 84);

- between November 2018 and February 2019, the Defendants served 10 subpoenas to absent class members;

- the Original Plaintiffs filed a Motion to Quash and/or for a Motion for Protective Order on February 28, 2019 (ECF No. 91), Defendants filed their response on March 6, 2019 (ECF No. 92), and the Court held oral argument and issued a ruling on March 22, 2019 (ECF Nos. 94-95);

- Defendants served their First Set of Document Requests on August 14, 2018, and the Original Plaintiffs served their objections and responses on September 13, 2018;

- the Original Plaintiffs filed a Motion to Compel on August 14, 2019 (ECF No. 99), Defendants filed their opposition on August 23, 2019 (ECF No. 105), the Court held oral argument on September 4, 2019 (ECF No. 106), and issued a ruling on September 27, 2019 (ECF No. 112);

- the Original Plaintiffs served their First Set of Interrogatories to Defendants on July 19, 2019, and Defendants served their responses and objections on August 19, 2019;

- the Original Plaintiffs served their Second Set of Interrogatories to Defendants on September 26, 2019, and Defendants served their responses and objections on November 8, 2019;

- Defendants served their First Set of Interrogatories on September 27, 2019, and the Original Plaintiffs served their responses and objections on November 8, 2019;

- Defendants served their Second Set of Requests for Production of Documents on September 27, 2019, and the Original Plaintiffs served their responses and objections on November 8, 2019;

- the Original Plaintiffs produced over 300 documents, comprising over 4,500 pages;

- Defendants produced over 66,000 documents, comprising approximately 383,000 pages;

- Berkshire, Credit Suisse, and other third parties produced approximately 2,000 documents;

- the Original Plaintiffs took 14 depositions of Defendants and other fact witnesses; and

- Defendants took 5 depositions of the Original Plaintiffs and other fact witnesses.

During this period, the parties also participated in mediation efforts with a highly experienced mediator, Robert A. Meyer, Esq., of JAMS. On or around March 5, 2019, the parties submitted their respective mediation materials to Mr. Meyer. On March 13, 2019, the parties attended a mediation session in Los Angeles, California. While those initial mediation efforts were unsuccessful, the parties remained in regular contact with Mr. Meyer, keeping him updated about developments throughout the course of the Litigation, and ultimately reached resolution with his assistance, as discussed below.

On December 6, 2019, the Original Plaintiffs filed their motion for leave to amend the First Amended Complaint. ECF No. 117. On January 17, 2020, Defendants filed their response, indicating that while reserving all rights, they did not oppose the motion for leave to amend. ECF No. 118.

On January 27, 2020, the Original Plaintiffs filed their Second Amended Class Action Allegation Complaint (the "Second Amended Complaint"). ECF No. 122.

On February 14, 2020, Defendants filed their Answer to the Second Amended Complaint. ECF No. 123.

On May 12, 2020, Lead Plaintiffs filed the notice of Ms. Lohmann's death, and an unopposed motion to substitute her daughter, Ms. Lynch, the successor trustee, as the plaintiff in this action. ECF Nos. 124-25. The Court granted the motion and substituted Ms. Lynch as the plaintiff on May 13, 2020. ECF No. 127.

From March 2020 to September 2020, the Settling Parties conducted expert discovery. Among other things:

- Lead Plaintiffs served their expert report on March 13, 2020;

- Defendants served four expert reports on May 15, 2020;

- Lead Plaintiffs served two expert reports and one reply expert report on June 26, 2020;

- Defendants served four sur-rebuttal expert reports from August 4, 2020 to September 14, 2020;

- Lead Plaintiffs took five depositions of Defendants' experts; and

- Defendants took three depositions of Lead Plaintiffs' experts.

On September 1, 2020, Defendants took the deposition of Ms. Lynch.

On October 6, 2020, Defendants filed their: (i) motion for summary judgment on liability; (ii) motion for summary judgment on damages and loss causation; and (iii) two *Daubert* motions concerning two of Lead Plaintiffs' experts.

On October 6, 2020, Plaintiffs filed their: (i) motion for class certification; and (ii) three *Daubert* motions concerning three of Defendants' experts.

During this time, the parties' counsel continued to discuss the potential for resolution of this matter with Mr. Meyer, as they had done periodically throughout this Litigation.  After a series of discussions, Mr. Meyer informed the parties on October 14, 2020, of a mutual agreement in principle on the essential economic elements of a settlement of the Litigation.

On October 14, 2020, the parties informed the Court of this agreement in principle to settle the Litigation.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny all of the claims and contentions alleged by Lead Plaintiffs in the Litigation and maintain that their conduct was at all times proper and in compliance with all applicable provisions of law. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied and continue to deny, *inter alia*, the allegations that they made a materially false statement or omission, that Lead Plaintiffs or the Class have suffered damage, that Lead Plaintiffs or the Class were harmed by the conduct that was alleged or that could have been alleged as part of this Litigation, or that Defendants have any liability to the Class. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

This Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Defendant with respect to any claim or of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Defendants' decision to settle the Litigation was based on the conclusion that further conduct of the Litigation would be protracted and expensive, that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation, and that it would be beneficial to avoid the uncertainty and risks inherent in any litigation, especially in complex cases like this Litigation.

## III.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports those claims. Lead Plaintiffs and Lead Counsel, however, recognize and acknowledge the expense and length of continued proceedings

necessary to prosecute the Litigation against Defendants through trial, potential post-trial proceedings sought by Defendants, and appeals. Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs and Lead Counsel also are mindful of the inherent problems of proof and possible defenses to the violations asserted in the Litigation. Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiffs and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of the Class, and that the Settlement provided for herein is fair, reasonable and adequate.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and on behalf of the Class Members) and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation shall be finally and fully resolved, discharged and settled, the Released Claims shall be released, and the Litigation shall be dismissed with prejudice, upon and subject to the terms and conditions of the Stipulation, as follows:

### 1.    Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.3     "Class" means all persons who purchased, sold or held Precision common stock during the period from and including October 9, 2015, the record date for Precision's special meeting regarding the Merger, through and including the consummation of the Merger on January 29, 2016.  Excluded from the Class are (i) Defendants; (ii) members of the immediate family of each Defendant; (iii) the Company's subsidiaries and affiliates; (iv) any entity in which any Defendant has a controlling interest; (v) the legal representatives, heirs, successors, administrators, executors, and assigns of each Defendant; and (vi) any Persons who timely and validly seek exclusion from the Class in accordance with the Notice of Pendency and Proposed Settlement of Class Action to be sent to Class Members pursuant to the Preliminary Approval Order.

1.4     "Class Member" or "Member of the Class" means any Person who falls within the definition of the Class as set forth in ¶1.3 of the Stipulation.

1.5     "Defendants" means Precision, Mark Donegan, Don R. Graber, Lester L. Lyles, Daniel J. Murphy, Vernon E. Oechsle, Ulrich Schmidt, Richard L. Wambold, and Timothy A. Wicks.

1.6     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.7     "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

1.8     "Final" means when the last of the following with respect to the Order and Final Judgment, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of three (3) business days after the time for the filing of any motion to alter or amend the Order and Final Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Order and Final

Judgment without any appeal having been filed; and (iii) if such motion to alter or amend is filed or if such an appeal is filed or noticed, then immediately after the final determination of that motion or appeal so that the Order and Final Judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an appeal shall include any petition for a writ of certiorari or other writ that may be filed in connection with the approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses, payment of Lead Plaintiffs' time and expenses or the Plan of Allocation of the Settlement Fund. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of distribution and/or application for attorneys' fees, costs, or expenses and/or Lead Plaintiffs' request for payment of time and expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

     1.9    "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Class, and whether the Court should: (1) enter the Order and Final Judgment approving the proposed Settlement; (2) approve the Plan of Allocation of settlement proceeds; and (3) approve Lead Counsel's petition for attorneys' fees and expenses to Lead Counsel and Lead Plaintiffs' request for payment of time and expenses or any special award to the Lead Plaintiffs.

     1.10    "Precision," "PCC," or the "Company" means Precision Castparts Corp.

     1.11    "Lead Counsel" means Robbins Geller Rudman & Dowd LLP and Berger Montague PC.

1.12    "Lead Plaintiffs" means NECA-IBEW Pension Trust Fund (The Decatur Plan) and Ann F. Lynch, as Trustee for the Angela Lohmann Revocable Trust.

1.13    "Litigation" means *NECA-IBEW Pension Trust Fund (The Decatur Plan), et al. v. Precision Castparts Corp., et al*., Case No. 3:16-cv-01756-YY (D. Or.).

1.14    "Local Counsel" means Stoll Stoll Berne Lokting & Shlachter P.C., or its successor(s).

1.15    "Order and Final Judgment" means the judgment to be rendered by the Court, in the form attached hereto as Exhibit B.  The Order and Final Judgment may be issued no earlier than ninety (90) days after completion of the provision of notice pursuant to 28 U.S.C. §1715.

1.16    "Person" means a natural person, individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.17    "Plaintiffs' Counsel" means any counsel who have appeared for Original Plaintiffs or Lead Plaintiffs in the Litigation, specifically: Robbins Geller Rudman & Dowd LLP; Berger Montague PC; Stoll Stoll Berne Lokting & Shlachter P.C.; Cavanagh & O'Hara; or their successors.

1.18    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses (including time and expenses awarded by the Court to Lead

Plaintiffs), and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation, and Defendants and their Related Parties shall have no responsibility or liability with respect thereto.

1.19    "Preliminary Approval Order" means the order described in ¶3.1 hereof.

1.20    "Related Parties" means, with respect to each Defendant, any and all of their related parties, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, or successors, as well as any and all of its or their current or former officers, directors, employees, associates, members of their immediate families, agents or other persons acting on their behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.

1.21    "Released Claims" means any and all claims that have been asserted, could have been asserted, or could be asserted in the future in this Litigation; and any and all actions, claims, debts, demands, losses, matters, rights, suits, causes of action, liabilities, obligations, judgments, suits, matters and issues of any nature whatsoever or for any remedy, known or unknown, accrued or unaccrued, contingent or absolute, mature or immature, discoverable or undiscoverable, concealed or hidden, suspected or unsuspected, whether based in law or equity, arising under federal, state, common or foreign law, or any other law, rule or regulation, which now exist or heretofore have existed, that have been asserted, could have been asserted, or could be asserted in the future, that arise out of, have arisen from, could have arisen from, concern, or relate in any manner to, the allegations, conduct, facts, events, transactions, acts, occurrences, statements, representations, omissions or any other matter related to, or arising out of, the Litigation, the Merger or the Proxy. "Released Claims" includes "Unknown Claims" as defined in ¶1.31 hereof.

1.22    "Released Persons" means each and all of the Defendants and each and all of their Related Parties.

1.23    "Settled Defendants' Released Claims" means all actions, claims, debts, demands, liabilities, losses, matters, rights, suits and causes of action of any nature whatsoever, known or unknown, contingent or absolute, mature or immature, discoverable or undiscoverable, whether concealed or hidden, suspected or unsuspected, whether based in law or equity, arising under federal, state, common or foreign law, or any other law, rule or regulation, which now exist or heretofore have existed, that have been or could have been asserted by the Released Persons or any of them against Lead Plaintiffs, Class Members, or Plaintiffs' Counsel, that arise out of, have arisen from, could have arisen from, concern, or relate in any manner to the institution, prosecution, settlement, or resolution of the Litigation or the Released Claims, except to enforce the releases and other terms and conditions contained in this Stipulation or any court order entered pursuant thereto.

1.24    "Settlement" means the settlement of the Litigation as set forth in this Stipulation.

1.25    "Settlement Amount" means the principal amount of Twenty-One Million Dollars ($21,000,000.00), to be paid pursuant to ¶¶2.1 and 2.2 of this Stipulation.  Neither Defendants nor their Related Parties shall have any obligation whatsoever to pay any amount over and above the principal amount of Twenty-One Million Dollars ($21,000,000.00).  Such amount is to be paid as consideration for full and complete settlement of this Litigation.

1.26    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto after being transferred to an account controlled by the Escrow Agent, and which may be reduced by payments or deductions as provided for herein or by court order.

1.27    "Settling Parties" means, collectively, each of the Defendants and Lead Plaintiffs on behalf of themselves and each of the Class Members.

1.28    "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits thereto.

1.29    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund as described in ¶2.8.

1.30    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing (or failing to file) the returns described in ¶2.8.

1.31    "Unknown Claims" means any Released Claim that any Lead Plaintiff or any Class Member does not know or suspect to exist in such Person's favor at the time of the release of the Released Persons, and any of the Settled Defendants' Released Claims that the Released Persons do not know or suspect to exist in his, her or its favor at the time of the release of Lead Plaintiffs, each and all of the Class Members and Plaintiffs' Counsel, which, if known by such party, might have affected such party's release of the Released Persons or Lead Plaintiffs, each and all of the Class Members and Plaintiffs' Counsel, or might have affected such party's decision not to object to this Settlement or seek exclusion.  Unknown Claims include those Released Claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden. With respect to any and all Released Claims and the Settled Defendants' Released Claims, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly, and each of the Class Members and Released Persons shall be deemed to have, and by operation of the Order and Final Judgment

shall have, expressly waived to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

Lead Plaintiffs and Defendants shall expressly, and each of the Class Members and Released Persons shall be deemed to have, and by operation of the Order and Final Judgment, shall have expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable or equivalent to California Civil Code §1542.  Lead Plaintiffs, Class Members and the Released Persons may hereafter discover facts in addition to or different from those that such party now knows or believes to be true with respect to the subject matter of the Released Claims and the Settled Defendants' Released Claims, but Lead Plaintiffs and Defendants shall expressly, and each Class Member and Released Persons, upon the Effective Date, shall be deemed to have, and by operation of the Order and Final Judgment shall have fully, finally, and forever released any and all Released Claims, or the Settled Defendants' Released Claims, as the case may be, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, whether or not previously or currently asserted in any action.  Lead Plaintiffs and Defendants acknowledge, and the Class Members and Released Persons shall be deemed by operation of the Order and Final Judgment to have acknowledged, that

the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

### 2.     The Settlement

#### a.     The Settlement Fund

2.1     In consideration of the terms of this Stipulation, Defendants shall pay or cause to be paid, the Settlement Amount into the Escrow Account, no later than thirty (30) days after the later of: (i) entry of the Preliminary Approval Order, as defined in ¶3.1 herein; and (ii) the provision to counsel for Defendants of payment instructions and a W-9 providing the tax identification number for the Escrow Agent.  The Escrow Agent shall deposit the Settlement Amount, plus any accrued interest, in a segregated escrow account ("Escrow Account") maintained by the Escrow Agent.

2.2     The deposit of the Settlement Amount is the only payment to be made by or on behalf of Defendants and their Related Parties in connection with this Settlement.  As set forth below, all fees, costs, and expenses incurred by or on behalf of Lead Plaintiffs and the Class associated with the Settlement, including, but not limited to, Taxes, Tax Expenses, administrative costs and costs of providing notice of the Settlement to the Class Members, any award of attorneys' fees and expenses of Plaintiffs' Counsel shall be paid from the Settlement Fund, and in no event shall Defendants or their Related Parties bear any additional responsibility for any such fees, costs or expenses.

#### b.     The Escrow Agent

2.3     The Escrow Agent will invest the Settlement Fund created pursuant to ¶2.1 hereof only in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and will reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All costs

and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund and neither Defendants nor their Related Parties shall have any responsibility for, interest in, or liability whatsoever with respect to the funds held in the Escrow Account, including with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4    The Escrow Agent shall not disburse the Settlement Fund except as provided by: (i) the Stipulation; (ii) an order of the Court; or (iii) prior written agreement of counsel for Defendants.

2.5    Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to the Stipulation and/or further order(s) of the Court.

2.7    The Escrow Agent may pay from the Settlement Fund the costs and expenses reasonably and actually incurred in connection with providing notice to Members of the Class, mailing the Notice and Proof of Claim and Release form and publishing the Summary Notice (such amount shall include, without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding the Notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing

the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs"). In the event that the Settlement does not become Final, any money paid or incurred for the above purposes, including any related fees, shall not be returned or repaid to Defendants or their insurers.

### c.    Taxes

2.8    (a)    The Settling Parties and the Escrow Agent agree that the Settlement Fund is intended to be and should be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §1.468B of the Code and the Treasury regulations promulgated thereunder, the Escrow Agent shall be designated as the "administrator" of the Settlement Fund. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this ¶2.8 and in all events shall reflect that all Taxes as

defined in ¶1.29 hereof (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.8(c) hereof.

(c)    All: (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) Tax Expenses, and costs incurred in connection with the operation and implementation of this ¶2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.8), shall be paid out of the Settlement Fund.  In no event shall Defendants or their Related Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amount, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants nor their Related Parties are responsible therefor nor shall they have any liability with respect thereto.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.8.

(d)     Neither Defendants nor their Related Parties are responsible for Taxes, Tax Expenses, or Notice and Administration Costs, nor shall they be liable for any claims with respect thereto.

**3.     Preliminary Approval Order and Final Approval Hearing**

3.1     Promptly after execution of the Stipulation, Lead Plaintiffs shall submit the Stipulation together with its Exhibits to the Court and Lead Counsel shall apply for entry of an order substantially in the form and content of Exhibit A attached hereto (the "Preliminary Approval Order"), requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, approval for the mailing of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form, substantially in the forms of Exhibits A-1 and A-2 attached hereto, and approval of the publication of a Summary Notice, substantially in the form of Exhibit A-3 attached hereto, or such other substantially similar form agreed to by the Settling Parties.

3.2     Lead Plaintiffs will request that the Court hold the Final Approval Hearing and finally approve the Settlement of the Litigation as set forth herein.  At or after the Final Approval Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.     Releases**

4.1     Upon the Effective Date, as defined in ¶1.6 hereof, Lead Plaintiffs, and each and all of the Class Members and anyone claiming through or on behalf of any of them, including, but not limited to, their predecessors, agents, representatives, attorneys, affiliates, heirs, executors, administrators, successors, and assigns, shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever waived, released, relinquished, and

discharged all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Litigation, against the Released Persons, regardless of whether such Class Member executes and delivers a Proof of Claim and Release form, except that claims relating to the enforcement of the Settlement shall not be released.

      4.2     Upon the Effective Date, as defined in ¶1.6 hereof, Lead Plaintiffs, each and all of the Class Members and anyone claiming through or on behalf of any of them, including, but not limited to, their predecessors, agents, representatives, attorneys, affiliates, heirs, executors, administrators, successors, and assigns, shall be forever barred and enjoined from commencing, instituting, asserting, maintaining, enforcing, prosecuting, or continuing to prosecute any action or proceeding in any forum (including, but not limited to, any state or federal court of law or equity, any arbitral forum, any tribunal, administrative forum, or the court of any foreign jurisdiction, or any other forum of any kind), any of the Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Litigation, against any or all of the Released Persons, regardless of whether such Class Member executes and delivers a Proof of Claim and Release form, except that claims relating to the enforcement of the Settlement shall not be released.

      4.3     The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

      4.4     Upon the Effective Date, as defined in ¶1.6 hereof, each of the Released Persons shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class

Members, and Plaintiffs' Counsel from all Settled Defendants' Released Claims, and shall forever be enjoined from prosecuting such claims, except for claims relating to the enforcement of the Settlement.

**5.      Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund**

5.1      The Claims Administrator, subject to such supervision and direction of the Court and/or Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.

5.2      The Settlement Fund shall be applied as follows:

(a)      to pay all Notice and Administration Costs;

(b)      to pay the Taxes and Tax Expenses;

(c)      to pay Plaintiffs' Counsel's attorneys' fees and expenses with interest thereon (the "Fee and Expense Award") and Lead Plaintiffs' time and expenses pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court; and

(d)      after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3      Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)      Each Class Member shall be required to submit a Proof of Claim and Release form, substantially in a form approved by the Court, supported by such documents as are

designated therein, including proof of the transactions claimed, or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

(b)    All Proof of Claim and Release forms must be submitted by the date specified in the Notice unless such period is extended by Court order.  Any Class Member who fails to submit a Proof of Claim and Release form by such date shall be forever barred from receiving any payment pursuant to this Stipulation, but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims.  A Proof of Claim and Release form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim and Release form shall be deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept for processing late-submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No person shall have any claim against Lead Plaintiffs, Lead Counsel or the Claims Administrator by reason of the decision to exercise or not exercise such discretion;

(c)    Each Proof of Claim and Release form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)    Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim and Release form, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies.  The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose Proof of Claim and Release forms it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

(e)    If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court;

(f)    Each claimant who submits a Proof of Claim and Release shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Order and Final Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim. In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement; and

(g)    The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation.  Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her or its pro rata share of the Net Settlement Fund.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

5.4    Except for their obligation to pay or cause payment of the Settlement Amount as set forth herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.5    No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in this §5.

5.6    No Person shall have any claim against Lead Plaintiffs, the Escrow Agent, Plaintiffs' Counsel or any claims administrator based on distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.7    Defendants shall not have a reversionary interest in the Net Settlement Fund.  The Net Settlement Fund shall be distributed to the Authorized Claimants in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  The Claims Administrator will make reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel,

shall, if feasible, reallocate that balance on a pro rata basis among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive a minimum of $10.00.  These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and any remainder shall thereafter be donated to an appropriate non-profit organization selected by Lead Counsel.

5.8    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

5.9    Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.  The time to appeal from approval of the Settlement shall commence upon the Court's entry of the Order and Final Judgment regardless of whether a Plan of Allocation has been approved.

## 6.    Lead Counsel's Application for Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees; and (b) payment of expenses in connection with prosecuting the Litigation; and (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid).  Any and all such fees, expenses, charges and costs awarded by the Court shall be payable solely out of the Settlement

Fund.  In addition, Lead Plaintiffs may seek payment from the Settlement Fund pursuant to 15 U.S.C. §78u-4(a)(4) for time and expenses incurred in representing the Class.  Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2    The attorneys' fees and expenses, as awarded by the Court (the "Fee and Expense Award"), shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon execution of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objection thereto, any appeal or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.  Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' Counsel, if any, in a manner which they, in good faith, believe reflects the contributions of Plaintiffs' Counsel to the initiation, prosecution, and resolution of the Litigation.

6.3    In the event that the Effective Date does not occur, or the Order and Final Judgment or Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then such of Plaintiffs' Counsel who have received any portion of the Fee and Expense Award shall within ten (10) business days from receiving notice from the Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus the interest earned thereon at the same rate as earned on the Settlement Fund consistent with such reversal or modification.  Any refunds required pursuant to this ¶6.3 shall be the several obligations of Plaintiffs' Counsel receiving fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Each such Plaintiffs' Counsel's law firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners

and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, or Lead Plaintiffs' expenses to be paid out of the Settlement Fund, are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Order and Final Judgment approving this Stipulation and the Settlement of the Litigation.

6.5    Any fees and expenses awarded by the Court shall be paid solely from the Settlement Fund. No Released Persons shall have any responsibility for any payment of any kind apart from payment of the Settlement Fund pursuant to ¶2.1.

## 7.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

7.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    Execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)    the Settlement Amount has been deposited in the Escrow Account, as required by ¶2.1 above;

(c)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(d)      the Defendants have not exercised their option to terminate the Stipulation pursuant to ¶7.4 hereof;

(e)      the Court has approved this Stipulation, following notice to the Class Members and the Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(f)      the Court has entered the Order and Final Judgment substantively in the form of Exhibit B attached hereto; and

(g)      the Order and Final Judgment has become Final, as defined in ¶1.8 hereof.

7.2      This is not a claims-made settlement.  As of the Effective Date, Defendants, their insurance carriers, and/or any such Persons or entities funding the Settlement on the Defendants' behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.  Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶7.1 hereof are not met, then this Stipulation shall be cancelled and terminated subject to ¶¶7.6-7.7 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

7.3      The Settling Parties shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's declining to enter a Preliminary Approval Order substantively identical to the Preliminary Approval Order submitted by the parties; (b) the Court's refusal to approve this Stipulation or a substantively identical Stipulation; (c) the Court's declining to enter the Order and Final Judgment, or substantively identical document; (d) the Order and Final Judgment being modified or reversed by the Ninth Circuit Court of Appeals or the

Supreme Court in any manner that results in a document that is not substantively identical to the document submitted by the parties; or (e) the Effective Date not otherwise occurring. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel, or the payment of Lead Plaintiffs' time and expenses approved by the Court, shall constitute grounds for cancellation or termination of the Settlement.

      7.4     In addition to the grounds set forth in paragraph 7.3 herein, Defendants shall have the unilateral right to terminate the Settlement and this Stipulation, and render them null and void and of no further effect, in the event that Class Members who purchased, sold or held, in aggregate, in excess of a certain number of shares of PCC common stock (such number as agreed upon by the Settling Parties) (the "Termination Threshold") during the period from and including October 9, 2015, the record date for Precision's special meeting regarding the Merger, through and including the consummation of the Merger on January 29, 2016, timely and validly request exclusion from the Class within the time and in accordance with the Notice to be sent to Class Members pursuant to the Preliminary Approval Order. Defendants shall be entitled to exercise the right referenced in this paragraph to terminate the Settlement and this Stipulation only if Defendants provide Lead Counsel with a Termination Notice and file that notice with the Court no later than 5:00 p.m. Eastern time on the third (3rd) business day prior to the Final Approval Hearing.

      (a)     The Settling Parties agree to maintain the confidentiality of the Termination Threshold, which is set forth in the Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement") that is simultaneously herewith being executed by Defendants' counsel and Lead Counsel. The Supplemental Agreement shall not be filed with the Court and its

terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiffs and the Defendants concerning the interpretation or application of the Supplemental Agreement, in which event the Settling Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

(b)      With respect to this ¶7.4, no later than twenty-one (21) calendar days prior to the Final Approval Hearing, the Claims Administrator shall provide Defendants' counsel with (i) copies of any and all requests for exclusion from the Class received by the Claims Administrator, (ii) a list of all persons or entities requesting exclusion, (iii) a list of shares of PCC common stock purchased, sold or held by such person or entity during the period from and including October 9, 2015, the record date for Precision's special meeting regarding the Merger, through and including the consummation of the Merger on January 29, 2016, as to which such person or entity is requesting exclusion, and the dates on which each such share was held, purchased, acquired or sold, and (iv) a report by Lead Counsel identifying which requests for exclusion Lead Counsel has determined to be timely and valid under the criteria specified in the Preliminary Approval Order and the Notice.  With respect to this paragraph, no later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall provide Defendants' counsel with a representation that all requests for exclusion received have been copied and provided to Defendants' counsel.

(c)      Lead Counsel may attempt to cause the retraction of any request for exclusion prior to the Final Approval Hearing.  If Lead Counsel succeeds in causing the retraction of sufficient requests for exclusion such that the Termination Threshold is no longer satisfied, then

Defendants' Termination Notice automatically shall be deemed a nullity. To retract a request for exclusion, a shareholder must, prior to the Final Approval Hearing, file a written notice with the Court stating his, her, or its desire to retract the request for exclusion from the Class and to be bound by the Settlement, this Stipulation, and any Order and Final Judgment entered herein, provided, however, that the filing of such written notice of retraction may be effected by Lead Counsel.

(d)     Any dispute among the Settling Parties concerning the interpretation or application of this paragraph and the Supplemental Agreement shall be presented to the Court for resolution upon the application of any party hereto.

7.5     The Settlement Fund (including accrued interest and income), less Notice and Administrative Costs, Taxes or Tax Expenses paid in connection with the Settlement provided for herein, incurred or due and owing, shall be refunded directly to the insurance carrier originating such payment no later than ten (10) business days from the receipt of any Termination Notice delivered in accordance with ¶¶7.3 or 7.4 above, or as otherwise agreed upon in writing by such insurance carrier and counsel for Defendants.

7.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall not forfeit or waive any factual or legal defense or contention in the Litigation and shall be restored to their respective positions in the Litigation as of October 14, 2020.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.6, 6.3, 7.5-7.7, 8.1-8.2 and 10.4-10.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as

vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel, or the payment of Lead Plaintiffs' time and expenses approved by the Court, shall constitute grounds for cancellation or termination of the Stipulation.

7.7    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor Plaintiffs' Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Settlement Fund for the Notice and Administration Costs of the Settlement pursuant to ¶2.7 hereof. In addition, any expenses already incurred and properly chargeable to the Settlement Fund for the Notice and Administration Costs of the Settlement pursuant to ¶2.7 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶7.5 hereof.

## 8.    No Admission of Wrongdoing

8.1    Defendants' execution of this Stipulation does not constitute an admission by any Defendant or their Related Parties: (i) of any wrongdoing, violation of law, or liability whatsoever; or (ii) that recovery could be had in any amount should the action not be settled. Defendants deny any wrongdoing and liability and maintain that their conduct at all times was legal and proper. Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto, nor any term hereof, may be offered into evidence in any proceeding or used in any manner as an admission or implication of liability or fault on the part of any Defendant or any other Person.

8.2    Lead Plaintiffs' execution of this Stipulation does not constitute an admission by Lead Plaintiffs: (i) of the lack of any wrongdoing, violation of law, or liability on behalf of any

Defendant whatsoever; or (ii) that recovery could not be had should the action not be settled. Neither this Stipulation, nor any term hereof, may be offered or received into evidence in any proceeding or used in any manner as an admission or concession by Lead Plaintiffs that Defendants have not engaged in any wrongdoing or that their conduct was at all times legal and proper.

### 9.    Stipulation to Certification of the Class for Settlement Purposes Only

9.1    The Settling Parties agree that certification of the Class, for settlement purposes only, is appropriate in the Litigation.  For purposes of this Settlement only, the Class comprises all Members of the Class, as defined in ¶1.3 above.  Nothing in this Stipulation shall serve in any fashion, either directly or indirectly, as evidence or support for certification of a class other than for settlement purposes, and the Settling Parties intend that the provisions herein concerning certification of the Class shall have no effect whatsoever in the event the Settlement does not become Final, as defined in ¶1.8 above.

9.2    The Settling Parties therefore stipulate to:  (i) certification, for settlement purposes only, of the Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Lead Plaintiffs as the class representatives; and (iii) appointment of Lead Counsel as class counsel.  Certification of the Class shall be binding only with respect to the Settlement of the Litigation and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

### 10.    Miscellaneous Provisions

10.1    The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

10.2    This Stipulation and the Exhibits attached hereto, constitute the entire agreement between the Settling Parties as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning the Stipulation or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

10.3    Except as otherwise provided for herein, each party shall bear his, her or its own costs.

10.4    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  Pursuant to 15 U.S.C. §78u-4(c)(1), the Settling Parties agree and the Order and Final Judgment will contain a statement that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the amount to be paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.5    This Stipulation, whether or not consummated, and any negotiations, discussions, or proceedings in connection herewith shall not be:

(a)     offered against any Defendant or their Related Parties as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant or their Related Parties of the truth of any fact alleged by the Lead Plaintiffs, the validity of any claim that has been or could have been asserted in the Litigation, the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing of Defendants or their Related Parties;

(b)     offered against any Defendant or their Related Parties as evidence of a presumption, concession, admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant or their Related Parties;

(c)     offered against any Defendant or their Related Parties as evidence of a presumption, concession, or admissibility of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Stipulation, in any other civil, criminal, or administrative action or proceeding other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that Defendants or their Related Parties may file the Stipulation and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  In addition, nothing contained in this paragraph shall prevent this Stipulation (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Stipulation (or any agreement or order relating thereto) or the Order and Final Judgment, or to enforce or effectuate provisions of this Settlement, the Final Judgment, or the Proofs of Claim and Release as to Defendants and their Related Parties; or

(d)    construed against Defendants or their Related Parties as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

10.6    Except as otherwise provided for herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.7    This Stipulation shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely the claims and disputes in this Litigation, as more fully described herein.  If any provision of this Stipulation shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

10.8    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

10.9    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.10    Neither the Class Members nor Defendants shall be bound by the Stipulation if the Court modifies any terms thereof, provided, however, that it shall not be a basis for Lead Plaintiffs to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or the Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to the Plan of Allocation, the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel, or the payment

of Lead Plaintiffs' time and expenses approved by the Court. Notwithstanding any such modification of the terms of the Plan of Allocation, the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel, or the payment of Lead Plaintiffs' time and expenses approved by the Court, Defendants and Defendants' insurers shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

10.11    Lead Plaintiffs and Lead Counsel represent and warrant that none of the Lead Plaintiffs' claims or causes of action referred to in this Litigation or this Stipulation has been assigned, encumbered, or in any manner transferred in whole or in part.

10.12    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.13    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered to the recipient; (ii) five (5) business days after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) eight (8) business days after being mailed to the recipient by certified or registered mail, return receipt requested, and postage prepaid, and addressed to the intended recipient as set forth below:

### *If to Lead Plaintiffs or to Plaintiffs' Counsel*:

A. Rick Atwood, Jr.
Esther Lee Bylsma
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: (619) 231-1058
Ricka@rgrdlaw.com
elee@rgrdlaw.com

Lawrence Deutsch
Jacob M. Polakoff
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  (215) 875-3000
ldeutsch@bm.net
jpolakoff@bm.net

**If to Defendants or to Defendants' counsel**:

Omid H. Nasab
Justin C. Clarke
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
onasab@cravath.com
jcclarke@cravath.com

Joel A. Mullin
Brad S. Daniels
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
joel.mullin@stoel.com
brad.daniels@stoel.com

10.14  The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or PDF via email shall be deemed originals.

10.15  The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Settling Parties.

10.16   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

10.17   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

10.18   Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

10.19   The Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Oregon, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Oregon without giving effect to that State's choice-of-law principles.

10.20   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.21   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated January 8, 2021.

ROBBINS GELLER RUDMAN
& DOWD LLP


s/ A. Rick Atwood, Jr.

Randall J. Baron (*admitted pro hac vice*)
randyb@rgrdlaw.com
A. Rick Atwood, Jr. (*admitted pro hac vice*)
ricka@rgrdlaw.com
Esther Lee Bylsma (*admitted pro hac vice*)
elee@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)


BERGER MONTAGUE PC


s/Lawrence Deutsch

Lawrence Deutsch (*admitted pro hac vice*)
ldeutsch@bm.net
Jacob M. Polakoff (*admitted pro hac vice*)
jpolakoff@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)


***Lead Counsel for Plaintiffs***

**STOLL STOLL BERNE LOKTING**
  **& SHLACHTER P.C.**
Gary M. Berne, OSB No. 774077
gberne@stollberne.com
Jennifer S. Wagner, OSB No. 024470
jwagner@stollberne.com
Lydia Anderson-Dana, OSB No. 166167
landersondana@stollberne.com
209 S.W. Oak Street, 5th Floor
Portland, OR  97204
Telephone:  503/227-1600
503/227-6840 (fax)

*Local Counsel for Plaintiffs*

**CAVANAGH & O'HARA**
Patrick J. O'Hara
patrick@cavanagh-ohara.com
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)

*Of Counsel for Plaintiff NECA-IBEW Pension Trust Fund*

**CRAVATH, SWAINE & MOORE LLP**


       s/Robert H. Baron
_____
Robert H. Baron (*admitted pro hac vice*)
rbaron@cravath.com
Omid H. Nasab (*admitted pro hac vice*)
onasab@cravath.com
Justin C. Clarke (*admitted pro hac vice*)
jcclarke@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  212/474-1000
212/474-3700 (fax)

**STOEL RIVES LLP**
Joel A. Mullin, OSB #862533
joel.mullin@stoel.com
Brad S. Daniels, OSB #025178
brad.daniels@stoel.com
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Telephone:  503/224-3380
503/220-2480 (fax)

*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on January 8, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

 s/ A. Rick Atwood, Jr.
A. RICK ATWOOD, JR.

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ricka@rgrdlaw.com

**Mailing Information for a Case 3:16-cv-01756-YY NECA-IBEW Pension Trust Fund et al v. Precision Castparts Corp., et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lydia Anderson-Dana**
  landersondana@stollberne.com,ahowell@stollberne.com

- **A. Rick Atwood , Jr**
  ricka@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Randall J. Baron**
  randyb@rgrdlaw.com

- **Robert H. Baron**
  rbaron@cravath.com,smoskowitz@cravath.com,sbui@cravath.com,mao@cravath.com,kwaters@cravath.com,sgentel@cravath.com,abakowski@cravath.com,tcameron

- **Brendan C. Benedict**
  bbenedict@cravath.com

- **Gary M. Berne**
  gberne@stollberne.com,gseaman@stollberne.com

- **Justin C. Clarke**
  jcclarke@cravath.com

- **Brad S. Daniels**
  brad.daniels@stoel.com,dmholland@stoel.com,docketclerk@stoel.com

- **Lawrence Deutsch**
  ldeutsch@bm.net,crmariney@bm.net,jpolakoff@bm.net

- **Eun Jin Lee**
  elee@rgrdlaw.com,eleeRGRD@ecf.courtdrive.com,jaimem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joel A. Mullin**
  joel.mullin@stoel.com,docketclerk@stoel.com,jen.dinucci@stoel.com

- **Danielle S. Myers**
  danim@rgrdlaw.com

- **Omid H. Nasab**
  onasab@cravath.com,mao@cravath.com

- **Patrick J. O'Hara**
  patrick@cavanagh-ohara.com

- **Jacob M. Polakoff**
  jpolakoff@bm.net

- **Jennifer S. Wagner**
  jwagner@stollberne.com,gseaman@stollberne.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)